Lois Ellen FAST, Appellant,

v.

The SCHOOL DISTRICT OF CITY OF LADUE; Dr. Henry E. Oppenheimer; James L. Zemelman; Edward A. O'Donnell; Janice E. Schoenfeld; Susan L. Bouma; Dr. Jerome F. Levy; Charles Cobaugh; Barbara Sacks; Arlene Jarett; Dr. William Raisch; and Dr. Charles D. McKenna, Appellees.

No. 82–1906.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 29, 1983.

Decided Feb. 23, 1984.

AN, ARNOLD, JOHN R. GIBSON, FAGG, and BOWMAN, Circuit Judges, en banc.

ARNOLD, Circuit Judge.

Lois Ellen Fast brought this suit against the School District of the City of Ladue, Missouri, claiming that the process by which she was laid off from her job as a full-time tenured science teacher violated the Fourteenth Amendment. The District Court, 543 F.Supp. 785 (E.D.Mo.1982), rejected plaintiff's claim that she was constitutionally entitled to a pre-termination hearing. It did, however, hold that the defendants had violated the Due Process Clause of the Fourteenth Amendment by refusing to give plaintiff a post-termination hearing and a statement of the basis for their action in selecting her for lay-off. On motion of plaintiff for attorneys' fees under 42 U.S.C. § 1988, the District Court held that plaintiff was not a "prevailing party" within the meaning of the statute and declined to award fees. We reverse.

I.

On April 13, 1978, plaintiff received a letter from the school board informing her that because of a decline in pupil enrollment she would be placed on leave of absence at the beginning of the 1978–79 school year. Missouri law required the school board to lay off non-tenured teachers first and then tenured teachers on the basis of merit in the pertinent field of specialization. Mo.Ann.Stat. § 168.124 (Vernon Supp.1983). Plaintiff appears to have been the only tenured teacher to be placed on leave of absence.

Plaintiff then wrote to the school superintendent objecting to the board's action and requesting information concerning its basis for selecting her for lay-off. The school superintendent replied simply that plaintiff had been selected for involuntary leave on the basis of merit in accordance with the applicable statutes. A representative of the National Education Association then wrote to the school superintendent requesting a meeting. No response was received, either from the school superintend-

Marilyn S. Teitelbaum, Schuchat, Cook & Werner, St. Louis, Mo., Robert H. Chanin, Robert M. Weinberg, A. Richard Feldman, Bredhoff & Kaiser, Washington, D.C., for appellant.

Robert G. McClintock, St. Louis, Mo., for appellees.

Before LAY, Chief Judge, HEANEY, BRIGHT and ROSS, Circuit Judges, HENLEY, Senior Circuit Judge, and McMILLI-

ent or from the president of the school board, except for the statement that defendants would not meet with "third parties."

Plaintiff then brought this suit. As already noted, she claimed that defendants had denied her procedural due process by refusing to give her a hearing and a statement of reasons or basis for her lay-off. She asked that she be reinstated and thereafter not be laid off without a pre-lay-off hearing. A second count of the complaint challenged as unconstitutionally vague the procedures that defendants had used in selecting plaintiff as the least meritorious of the tenured science teachers.

The District Court rejected plaintiff's claim for reinstatement and pre-lay-off process. It did, however, grant in part plaintiff's motion for summary judgment with respect to the first count of her complaint. The Court ordered defendants to provide plaintiff with a written statement of the basis for its decision, a description of the manner in which the decision was reached, the information relied on by the decision-makers, and an opportunity to respond before an impartial board. Defendants then did furnish plaintiff with a statement of the basis for their action, in compliance with the Court's order. A date was also fixed on which plaintiff could appear before the board to give her side of the case. After receiving this response, the plaintiff waived the hearing, dismissed Count II of her complaint, and moved for nominal damages and attorneys' fees in the amount of $22,980. The District Court awarded plaintiff one dollar in nominal damages but denied the motion for fees.

1. The District Court did not have the benefit of *Hensley,* which was decided by the Supreme Court after the District Court's order was entered in this case.

2. We are not ignoring the point made in oral argument by counsel for the school district that the Supreme Court's opinion does not state in so many words that the standard we have just quoted is the only permissible one under § 1988. The Supreme Court's opinion says only that the standard quoted is "[a] typical formulation." 103 S.Ct. at 1939. We believe

A panel of this Court affirmed, *Fast v. School District of Ladue,* 712 F.2d 379 (8th Cir.1983), one judge dissenting. Plaintiff's petition for rehearing en banc was then granted, and the case was reargued before the Court en banc.

## II.

■ The question presented on this appeal is whether plaintiff was a "prevailing party" under 42 U.S.C. § 1988. This issue is governed by the Supreme Court's recent decision in *Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), in which the appropriate test was set forth in the following language:

> A plaintiff must be a "prevailing party" to recover an attorney's fee under § 1988. The standard for making this threshold determination has been framed in various ways. A typical formulation is that "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Nadeau v. Helgemoe,* 581 F.2d 275, 278–279 (CA 1 1978). This is a generous formulation that brings the plaintiff only across the statutory threshold. It remains for the district court to determine what fee is "reasonable."

103 S.Ct. at 1939 (footnotes omitted).[1] We hold that Fast has met this standard.

■ The words and phrases selected by the Supreme Court[2] to describe who is a "prevailing party" are significant. A plaintiff is a prevailing party if he or she succeeds "on *any* significant issue ... which achieves *some* of the benefit the parties

nevertheless that the standard quoted is the proper one, and we will apply it in this Circuit. The Supreme Court's description of a legal rule as "a typical formulation," without any intimation whatsoever that it might not agree with that formulation, is a firm basis for a fair inference that the Court in fact approves the standard given. The only other possible standard mentioned by the Court appears in a footnote as a parenthetical description of a holding by another circuit, preceded by the signal "*Cf.*" 103 S.Ct. at 1939 n. 8.

sought in bringing suit." 103 S.Ct. at 1939 (emphasis ours). It is not necessary that a plaintiff succeed on all of the significant issues, or that the court award all of the benefit sought by the complaint. In addition, the Supreme Court describes its test as "a generous formulation" and stresses that a plaintiff who meets it is only brought "across the statutory threshold" of eligibility for a fee award. The amount of the award, as is fully explained by the *Hensley* opinion, is another matter entirely. A plaintiff may be a "prevailing party" and still, because of failure to prevail on other issues, not receive full compensation for all of the time and expense invested in a case.

Here, the District Court granted plaintiff's motion for summary judgment on Count I of the complaint and held that the defendants had deprived her of property without due process of law, in violation of the Fourteenth Amendment to the Constitution of the United States. The Court found that the so-called statement of basis given to plaintiff to justify her lay-off was constitutionally inadequate and directed defendants to give her a proper statement of reasons, a description of the manner in which the decision to lay her off had been reached, a summary of the information relied on by the board in reaching its decision, and an opportunity to respond before an impartial body. The plaintiff thus secured both declaratory and injunctive relief. In addition, the District Court awarded her one dollar in nominal damages.

 It is true that the plaintiff, for reasons of her own, chose not to pursue the matter and did not appear before the board for a post-lay-off hearing. It is also true that she failed with respect to a number of other claims made in her suit: her contention that a pre-lay-off hearing was required, for example, was rejected. The District Court held that plaintiff had not requested, either in her complaint or in her motion for summary judgment, a post-lay-off hearing, which it described as the only substantive relief she obtained, but we respectfully disagree with that reading of the record. It is true that the plaintiff's prayer

for relief with respect to Count I of her complaint stresses her desire for a pre-lay-off hearing and does not specifically request, in the alternative or otherwise, that a post-lay-off hearing be afforded. On the other hand, Paragraph 6 of the prayer for relief, D.R. 7, does generally request that jurisdiction of the cause be maintained "until such time as Defendants establish a hearing procedure in conformity with the requirements of the Fourteenth Amendment," and Paragraph 9, *ibid.*, requests "such other additional relief as may appear to the Court equitable and just in the premises." One of the allegations of Count I of the complaint, Paragraph 19, D.R. 4, is that "[a]lthough requested to do so, Defendants have failed and refused to ... furnish Plaintiff with a pre- *or post*-layoff hearing" (emphasis ours). Surely it is a fair inference that, although plaintiff's first preference was naturally for reinstatement and a pre-lay-off hearing, she was also requesting, in the alternative, a post-lay-off hearing. Furthermore, even if the complaint is read not to request a post-lay-off hearing, the District Court held that plaintiff was entitled to such a procedure, and that the failure to afford it was unconstitutional. A party is entitled to whatever relief is appropriate under the proof, "even if the party has not demanded such relief in his pleadings," Fed.R.Civ.P. 54(c). In determining who is a "prevailing party" for fee purposes, the important thing is what relief was awarded on the facts and the law, not what relief was expressly requested by the pleadings.

The relief secured here was not insignificant. First of all, the simple holding that the board has deprived plaintiff of her property without due process of law, in and of itself, is an important vindication of constitutional rights. When public officials violate the rights of citizens, and courts so declare, an important deterrent effect results. Other public officials are less likely to violate other citizens' rights in the future. The specific relief obtained, in addition, tends quite substantially to reduce the likelihood of future arbitrary conduct by public employers. If an employer must

give reasonably detailed reasons for laying off a teacher, and if it must give the teacher an opportunity, even though after the decision, to appear before some impartial body and give her side of the case, school boards will be less likely to lay teachers off without giving careful and impartial consideration to the reasons for the decision in advance.

Furthermore, the relief granted in this case was not, as a practical matter, limited to the named plaintiff. This was not a class action, but after the District Court's decision granting plaintiff's motion for summary judgment, the school board met and revised its official lay-off policies to comply with the four minimum requirements of due process set forth by the District Court in its order granting summary judgment. The board also decided to apply the revised policy retroactively to all tenured teachers in lay-off status. Thus, not only the plaintiff herself, but also all teachers employed by the defendant school board, obtained important benefits from this lawsuit. We stress this factor as important in our conclusion that plaintiff was a "prevailing party." One of the benefits of successful litigation under 42 U.S.C. § 1983, at least where, as here, that litigation results in declaratory and injunctive relief, is that a standard of conduct is laid down for public officials, a standard which will in the future benefit all those persons in a situation similar to plaintiff's.

In addition, two of our very recent cases strongly indicate that plaintiff is a "prevailing party." The Court en banc is not, of course, bound by prior opinions of panels. We have both the power and the right, in appropriate cases, to overrule panel opinions. This power, however, should be exercised sparingly and with great caution, especially when the panel opinions involved are as fresh as the ones here, and when the issue is one of statutory construction, the kind of question on which Congress can easily correct us if it wishes. See, e.g., Cottrell v. Commissioner, 628 F.2d 1127, 1131 (8th Cir.1980) (en banc): "The doctrine of stare decisis, weighty in any context, is

especially so in matters of statutory construction. For in such cases Congress may cure any error made by the courts. Until it does, the bar and the public are justified in expecting the courts, except in the most egregious cases, neither to depart from previous interpretations of statutes, nor to give them a grudging application" (footnote omitted).

The first of the two cases is *Dean v. Civiletti,* 670 F.2d 99 (8th Cir.1982) (per curiam). There, suit was brought under Title VII of the Civil Rights Act of 1964 alleging sex discrimination by the United States Marshals Service. The District Court found that discrimination had occurred in one respect claimed by the plaintiff, though not in another. Reinstatement was denied, and there was no evidence that plaintiff had suffered any monetary loss. On appeal, we affirmed the merits of the District Court's decision. We nevertheless ordered that nominal damages of one dollar be awarded, and that attorneys' fees be imposed on the defendant for proceedings both in the District Court and in this Court. The plaintiff, we said, had "prevailed on [a] discrimination issue," *id.* at 101, and was therefore entitled to an award of fees. The relief that Fast has gained in this case is at least as significant as the relief granted in *Dean.*

The second case is *Pollock v. Baxter Manor Nursing Home,* 716 F.2d 545 (8th Cir. 1983) (per curiam), *modifying* 706 F.2d 236 (8th Cir.1983) (per curiam). Pollock claimed that she had been fired by the defendant nursing home under stigmatizing conditions, and that she was entitled under the Fourteenth Amendment to prior notice and a hearing. At the trial of her § 1983 action, the District Court found as a fact that the charges that led to her being fired were true, and on appeal her lawyer conceded that this finding was not clearly erroneous. We nevertheless held that Pollock had not been afforded procedural due process, because the nursing home had not given her an opportunity for a proper pre-termination hearing. Because it had become clear that the charges against Pollock were true, there

was no question of reinstatement. We nevertheless reversed the District Court's judgment dismissing her complaint, held that she was entitled to nominal damages for the failure to hold a due-process hearing, and directed, citing *Hensley v. Eckerhart, supra,* that reasonable attorneys' fees be awarded. Certainly the relief secured by the plaintiff in *Pollock* was no more extensive or significant than that secured by Fast here.

Accordingly, we hold that plaintiff was a "prevailing party" within the meaning of the statute, and that the District Court should have made an award of attorneys' fees and costs under 42 U.S.C. § 1988.

### III.

The amount of the fee is quite another matter, and we leave that to the sound discretion of the District Court on remand. As *Hensley* makes clear, the fact that plaintiff failed on some of the issues, including her request for reinstatement, which was probably the one thing she wanted most out of her suit, is directly relevant on the question of the proper amount of a fee award. Obviously an award in the full amount requested would not be appropriate. The District Court should first consider what amount of plaintiff's attorneys' time is fairly attributable to the issues on which she prevailed. Ordinarily, a fee award should then be made for the number of lawyers' hours so expended at whatever hourly rate the District Court determines is appropriate. But other circumstances may be considered as well. It is open to defendants to argue that it was not necessary for plaintiff to file suit at all to obtain the relief she ultimately got. (And plaintiff, on the other hand, could well point out that if defendants had responded in a substantive way to her presuit request for information, the whole thing would have been unnecessary.) In addition, the District Court may consider, if the evidence warrants, whether the time spent on the issues on which plaintiff prevailed was excessive. See *Jaquette v. Black Hawk County,* 710 F.2d 455 (8th Cir.1983).

The judgment is reversed, and the cause remanded for a fee determination consistent with this opinion.

It is so ordered.

BRIGHT, Circuit Judge, concurring, joined by ROSS and FAGG, Circuit Judges.

I concur in the court's opinion, but add a few words concerning the potential for abuse of the public purse through fee awards under section 1988. Too often, in cases like this, "the real losers * * * are the taxpayers who ha[ve] to pay the ultimate cost of th[e] litigation." *Jaquette v. Black Hawk County, Iowa,* 710 F.2d 455, 464 (8th Cir.1983) (Bright, J., concurring and dissenting).

Here the plaintiff's claim to a fee award rests on the determination by the district court that the school board should have afforded her a post-termination hearing and a statement of the reasons for her layoff. This relief represented a small part of what the plaintiff wanted, but more than the defendant would voluntarily give. Yet if both parties had proceeded reasonably, this result undoubtedly could have been achieved with a lot less litigation and a lot less expense for both parties.

Too many times a public body responds to a lawsuit against it with the inflexible resolve to fight the claim down the line, and not to negotiate. Yet the pursuit of this strategy often means that even where the public body has won the battle, it ends up losing the war.

It seems to me the time has come for public bodies to recognize and to do something about the high cost of litigation. In my opinion, attorneys for defendants like the defendant school district here have an obligation to attempt to negotiate a reasonable settlement as quickly as possible. Otherwise, as in this case, where the defendant insists on litigating all the way down the line, it may end up paying the fees for both sides even though it has lost only a small part of the contest over the merits of the plaintiff's claim.

Plaintiffs too have a similar obligation to proceed reasonably and in good faith. Where plaintiffs make exaggerated or outrageous demands for relief which lack support in the law or in provable facts, the trial court should not reward them from the public purse for their modern-day tilting at legal windmills. Likewise, if the plaintiff declines a reasonable offer to settle and then succeeds in only a limited way in the courtroom, that circumstance should weigh against the plaintiff in the award of fees.

These considerations ought to play a part in the awarding of fees under section 1988.

HENLEY, Senior Circuit Judge, with whom JOHN R. GIBSON and BOWMAN, Circuit Judges, concur, dissenting.

In holding that Ms. Fast won on a significant issue which achieved some of the benefits she sought, the court's reasoning flies in the face of reality.

One may read in vain both the prayer of the complaint and the plaintiff's motion for summary judgment for any specific request for post-termination relief. Indeed, until it became clear that plaintiff would win nothing of consequence, her entire case was couched in terms of reinstatement, backpay and damages. In short, she wanted her job and money. She got neither.

Now it can be said, as says this court *en banc,* that plaintiff's prayer "for such other additional relief as may appear to the court equitable and just in the premises" includes a stated desire for a post-termination hearing. Had such a proposition been advanced by a group less sincere, less dedicated, less capable than my brothers of the majority, it might have been described, either in language of the drawing room or in a literal sense, as pure poppycock! With all due respect, I find here, as in many cases, no reason to believe that the inclusion of "other equitable and just" relief is anything more than catch-all lawyer talk put in to add color, if not aroma.

Again, let's look at the record. We do not know what, if anything, plaintiff did with the statement of reasons for suspension awarded by the court. We do know

that she does not now question the validity of her layoff and that she did not bother to attend the meeting provided for her hearing. Rather, after passage of some little time, she abandoned her case and her attorneys sought nominal damages of $1.00 and attorney's fees in the amount of $22,980.00. Her refusal to accept the hearing suggests most strongly that she had little, if any, interest in a post-layoff hearing she could not win or in any "other equitable and just" relief.

The court's reliance on some earlier panel decisions of this court is understandable because they reached results consistent with views of the author of the majority opinion. However, those decisions should not be controlling here. In *Pollock v. Baxter Manor Nursing Home,* 716 F.2d 545 (8th Cir.1983), where plaintiff was discharged for falsifying time cards of her daughters, she made no contention on appeal that the charges against her were false, but a divided panel of this court held she was entitled to nominal damages and attorney's fees for lack of a hearing at which she could not win. My views on that case were expressed in dissent, *id.* at 547, and need not be fully repeated.

It is noted that in awarding nominal damages, the *Pollock* majority failed to follow and did not cite *Seal v. Pryor,* 670 F.2d 96 (8th Cir.1982), which awarded no relief for a dismissed state employee who could not show that alleged stigmatizing information was false.

Coincidentally *Seal* was decided the same day as *Dean v. Civiletti,* 670 F.2d 99 (8th Cir.1982) (per curiam), in which plaintiff sought reinstatement and back pay. She got neither, but in a short per curiam opinion citing no authority this court simply announced an award of nominal damages for discrimination and directed an allowance of attorney's fees.

I am persuaded that this court is being overly generous in its application of the language of *Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), that " 'plaintiffs may be considered "prevail-

ing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Id.* at 1939 (*quoting Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978)). Specifically the court is awarding attorneys' fees in cases in which plaintiffs won nothing of consequence and nothing the plaintiff really wanted. The net effect can be harshly punitive for defendants who have won on every important issue chosen for litigation. It tends to trivialize the Constitution and § 1983 by making them a program for lawyers' relief. *Pollock,* 716 F.2d at 548 (Henley, J., dissenting).

This court has observed that in authorizing fees the Congress sought to award "fees which are adequate to attract competent counsel, but which do not produce windfalls to attorneys." *McLean v. Arkansas Bd. of Educ.,* 723 F.2d 45, 49 (8th Cir.1983) (per curiam) (J.R. Gibson, J., dissenting); *Avalon Cinema Corp. v. Thompson,* 689 F.2d 137, 141 (8th Cir.1982); (*quoting* S.Rep. No. 94–1011, 94th Cong., 2d Sess. 6, *reprinted in* 1976 U.S.Code Cong. & Ad.News 5908, 5913). The court should recognize that a windfall can be provided by awarding a fee where none is due as well as by overpayment where a fee is due. Hopefully, either the Supreme Court or the Congress will correct the court's error.

As indicated, I cannot agree that plaintiff is a prevailing party for purposes of assessment of attorney's fees; thus I dissent.