774 F.2d 1161
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Charmaine L. Cornish and Georgia D. Manzie, Plaintiffs-Appellees,
v.
Perry Johnson, Director, Michigan Department of Corrections,
and Gloria Richardson, Superintendent, Huron Valley Women's
Facility, Individually and in their official capacities,
Jointly and Severally, Defendants-Appellants.
 No. 84-1593
 United States Court of Appeals, Sixth Circuit.
 9/11/85
 
 E.D.Mich., 510 F.Supp. 1019
 AFFIRMED
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
 BEFORE: KRUPANSKY and MILBURN, Circuit Judges; and NEESE[1], Senior (Retired District) Judge.
 PER CURIAM.
 
 
 1
 Defendants Perry Johnson, Director of the Michigan Department of Corrections, and Gloria Richardson, Superintendent of the Huron Valley Women's Facility, appeal the award of attorney's fees to counsel for plaintiff Georgia D. Manzie for services performed in conjunction with Manzie's Sec. 1983 cause of action.
 
 
 2
 Manzie, a former prisoner of the Michigan Department of Corrections, joined Charmaine Cornish in commencing a Sec. 1983 pro se action on September 21, 1977, wherein declaratory relief and monetary damages were sought for the defendants' alleged failure to provide a constitutionally adequate law library during plaintiffs' incarceration, thus denying plaintiffs' first amendment right of access to the courts. This case was styled Cornish, et al. v. Johnson, et al. Manzie's action was subsequently consolidated with a pending class action, Glover v. Johnson, 478 F. Supp. 1075 (E.D. Mich. 1979).
 
 
 3
 In its opinion resolving the Glover dispute, the district court specifically noted that Glover and Cornish had been deemed suitable for consolidation because both cases challenged the adequacy of the law library furnished to women at the Detroit House of Corrections ('DeHoCo') and the Huron Valley Women's Facility ('Huron Valley'). Glover, 478 F. Supp. at 1076, 1094. The Glover opinion further disclosed that Manzie and co-plaintiff Cornish had 'appeared pro se on several occasions for the purposes of examining witnesses pertinent to their claim and making their final argument,' but that the court had appointed counsel representing plaintiffs in Glover to aid Cornish and Manzie '[f]or the limited purpose of preparing and filing a post-trial brief.' Glover, 478 F. Supp. at 1094.
 
 
 4
 By applying the standards enunciated by the Supreme Court in Bounds v. Smith, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), the district court in Glover concluded that the law library at Huron Valley, as it existed at the time of trial in 1979, wasconstitutionally adequate, 478 F. Supp. at 1096, but that female prisoners were also entitled to a paralegal program currently available to all male prisoners. 478 F. Supp. at 1097. Thus, the court determined that defendants had effectively denied plaintiffs' right of access to the courts. Id. The court added:
 
 
 5
 Having determined the liability of Defendants to Plaintiffs in this matter [of access to the courts at Huron Valley], I must resolve the issue of damages. At an earlier point in these proceedings, I limited plaintiffs' proofs to matters going directly to the issue of liability on the grounds that damages would become relevant only if a finding of liability was made. Plaintiffs, therefore, must now be given an opportunity to prove such damages, if any, as were caused by the state's denial of their constitutional rights, and a hearing for that purpose will be held at a date to be set by the court.[21]
 
 
 6
 Glover, 478 F. Supp. at 1097-1098.
 
 
 7
 In footnote 21, the Glover court further explained its holding:
 
 
 8
 21. At this hearing, Plaintiffs will be permitted to reintroduce their evidence relating to the conditions of the law library at the Detroit House of Corrections insofar as it relates to the denial of their rights at the time [when they were incarcerated]--a matter which I do not specifically address in this opinion. Defendants, of course, will also be permitted to meet the issues raised by these proofs.
 
 
 9
 After the Glover decision was issued, plaintiff Manzie retained present counsel to represent her regarding the remaining issues in her case as outlined above in the Glover opinion. In hearings on June 5 and 7, 1981, plaintiff, through counsel, offered extensive legal argument in support of the allegation that her constitutional right of access to the courts had been violated because of deficiencies in the DeHoCo and Huron Valley law libraries prior to September, 1977. To support Manzie's claim, several witnesses were called, including James Neuhard, director of the Michigan State Appellate Defender's Office; defendants Richardson and Johnson; and Charles Wolf, assistant state law librarian. In addition, legal arguments were taken as to defendants' claims of Eleventh Amendment, executive and/or qualified immunity.
 
 
 10
 In a memorandum entitled 'Opinion on Damages' issued on December 18, 1981, the district court initially explained that the purpose of the June hearing was 'to determine the library resources available to the individual plaintiffs during their incarceration and to assess their damages, if any, from the alleged inadequacy.' After an extended discussion of the evidence adduced at the hearing, the court concluded that the law library at DeHoCo, where women felons were housed prior to completion of Huron Valley in August, 1977, was 'nonfunctional at DeHoCo and, for all practical purposes, non-existent' and 'not in conformity with constitutional standards' during the relevant time periods. The 1981 opinion then devoted five pages to addressing three affirmative defenses to plaintiffs' charges, specifically Eleventh Amendment immunity, executive immunity, and qualified immunity, ultimately holding the defenses unavailable to defendants herein. The remaining sections of the opinion discussed the damages to be awarded plaintiffs, concluding that a nominal award of $1 was appropriate. Manzie appealed the decision, which was affirmed by the Sixth Circuit.
 
 
 11
 Manzie's attorney, Richard Soble, submitted a fee petition, based on contemporaneously maintained records, for 86.95 hours at $125 an hour, resulting in a total award request of $10,868, plus $287 in costs. Following a hearing on the petition, the court determined that Manzie was the prevailing party, that $125 an hour was a reasonable rate, and that a total award of $2,500 was just. Defendants filed a timely appeal of the fee award, wherein they urged inter alia, that Manzie was not a 'prevailing party' within the ambit of Sec. 1988.
 
 
 12
 In Hensley v. Eckerhart, 461 U.S. 424, 103 S. Ct. 1933 (1983), the U.S. Supreme Court reviewed the legislative history of the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. Sec. 1988, and concluded that the purpose of Sec. 1988 is to ensure effective access to the judicial process for persons with civil rights grievances. 103 S.Ct. at 1937. The Court opined:
 
 
 13
 Accordingly, a prevailing plaintiff 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'
 
 
 14
 Id. (citations omitted).
 
 
 15
 The Hensley Court also adopted the standard recognized in numerous circuits that an individual should be considered a 'prevailing party' for attorney's fees purposes 'if they succeed on any significant issue in the litigation which achieves some of the benefit the parties sought in bringing the suit.' Hensley, 103 S.Ct. at 1939 (quoting Nadeau v. Helgemoe, 581 F.2d 275, 278-279 (1st Cir. 1978)). The Sixth Circuit reflected a similar sentiment in Dover v. Rose, 709 F.2d 436 (6th Cir. 1983), wherein it opined:
 
 
 16
 In order to be a prevailing party for purposes of section 1988, a plaintiff must establish his entitlement to some form of relief on the merits of a substantial claim. (citations omitted). The plaintiff must accomplish this by obtaining a favorable final judgment on the merits, or by obtaining relief through a consent judgment or other settlement. (citations omitted). This circuit has also indicated that a plaintiff may qualify as a prevailing party if his lawsuit acts as a 'catalyst' which causes the defendant to make significant changes in its past practices, though no direct relief is obtained. (cite omitted).
 
 
 17
 Dover, 709 F.2d at 439.
 
 
 18
 Despite the contrary protestations of defendants herein, it is obvious that Manzie meets the 'prevailing party' criteria enunciated in Hensley and Dover. Through the evidence adduced in the June, 1981, hearings, Manzie proved the specific allegations of her Sec. 1983 complaint, namely, that the library facilities at DeHoCo and Huron Valley were constitutionally deficient prior to 1977. Thus, Manzie prevailed in the litigation and the purposes of Sec. 1988 were achieved by her vindication of the important constitutional entitlement of access to the courts.
 
 
 19
 Defendants further suggested, however, that even if Manzie prevailed, she did so during the Glover litigation, wherein she appeared pro se, rather as a result of the 1981 hearings for which Manzie retained counsel, which proceedings defendants' characterize as the 'post-liability' phase of the litigation. Thus, defendants, urged, an award of attorney's fees in the instant case is unwarranted. See e.g., Dowdell v. City of Apopka, 698 F.2d 1181, 1192 (11th Cir. 1983) (Sec. 1988 should not be used to provide windfall to opportunistic counsel); Wheatley v. Ford, 679 F.2d 1037, 1040 (2nd Cir. 1982) (same).
 
 
 20
 Defendants argument in this respect completely ignores the unequivocal language found in footnote 21 of the Glover opinion, 478 F. Supp. at 1098, n. 21, wherein the trial court expressly stated that the issue of liability stemming from the deficiencies of the DeHoCo law library was left for resolution during subsequent proceedings. It was not until the trial court considered the evidence adduced by Manzie's counsel during the June, 1981, hearings that it determined that Manzie's rights had in fact been violated. Thus, it appears beyond peradventure that Manzie's counsel played a critical role in vindicating her constitutional rights, therefore entitling him to remuneration pursuant to Sec. 1988.
 
 
 21
 Defendants further challenged the amount of attorney's fees awarded to Manzie's counsel. As aforementioned, counsel submitted a fee petition seeking compensation for 86.95 hours at $125 per hour, with the district court ultimately awarding approximately 25% of the amount requested.
 
 
 22
 Defendants argued that the amount of the award was excessive because '[p]laintiff's success on the question of damages was not simply limited, it was virtually nonexistant.' In advancing this contention, defendants focus on the damage amount awarded the plaintiff, i.e., $1, as the measuring stick of her success in the litigation.[2] As observed previously, however, the actual damage award was entirely secondary if not irrelevant to whether or not plaintiff was the 'prevailing' party. Rather, the appropriate question was whether plaintiff had in fact vindicated her constitutional rights. As the district court's order of December 17, 1981, unequivocally states that plaintiff had prevailed on her claim that defendants had intentionally violated her right of access to the courts, an award of attorney's fee was proper pursuant to the Hensley analysis. The fact that plaintiff's counsel only received 25% of the requested amount, despite documentation by contemporaneous records and lack of objection by defendants as to the total number of hours and hourly rate, makes affirmance all the more appropriate.
 
 
 23
 In view of the foregoing, the decision of the district court is AFFIRMED.
 
 
 
 [1]
 Hon. C.G. Neese, of Nashville, Tennessee, who retired as a district judge of the United States District Court for the Eastern District of Tenneessee, sitting by designation and assignment
 
 
 [2]
 Defendants concede that an award limited to nominal damages does not by itself negate entitlement to attorney's fees pursuant to Sec. 1988. See McCann v. Coughlin, 698 F.2d 112 (2nd Cir. 1983); Dean v. Civiletti, 670 F.2d 99 (8th Cir. 1982); Johnson v. Snyder, 639 F.2d 316 (6th Cir. 1981) (per curiam); Perez v. Univ. of Puerto Rico, 600 F.2d 1 (1st Cir. 1979)